# EXHIBIT A

| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Michelle Thelen,

        Plaintiff,

v.

Sunburst Chemicals, Inc.,

        Defendant.

Court File No. _____

**SUMMONS**

THIS SUMMONS IS DIRECTED TO DEFENDANT SUNBURST CHEMICALS, INC.:

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a **written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

   WANTA THOME PLC
   100 South Fifth Street, Suite 1200
   Minneapolis, MN 55402

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get

legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: December 17, 2025

Shawn J. Wanta
Bar No. 0389164
*Attorney for Plaintiff*
WANTA THOME PLC
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
sjwanta@wantathome.com

STATE OF MINNESOTA                                   DISTRICT COURT

COUNTY OF HENNEPIN                              FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| Michelle Thelen, | Court File No. _____ |
| Plaintiff, | Judge: _____ |
| | Case type: Employment |
| v. | **COMPLAINT AND** |
| Sunburst Chemicals, Inc., | **JURY DEMAND** |
| Defendant. | |

The Plaintiff, Michelle Thelen ("Ms. Thelen" or "Plaintiff") for her Complaint against Defendant Sunburst Chemicals, Inc. ("Sunburst" or "Defendant"), states and alleges as follows:

### PARTIES, JURISDICTION & VENUE

1.     Plaintiff Michelle Thelen is a natural person residing in the City of Farmington, County of Dakota, State of Minnesota.

2.     Defendant Sunburst Chemicals Inc. is a corporation with its primary place of business in Bloomington, Minnesota.

3.     At all times relevant to this action, Plaintiff and Defendant were "employee" and "employer," respectively under Minn. Stat. § 363A.03.

4.     Jurisdiction is proper because Plaintiff's claims arise under Minnesota state law, Plaintiff maintains a residence in Minnesota, Defendant conducts business in Minnesota, and the events giving rise to this action occurred in Minnesota.

5.     Venue is proper in the County of Hennepin pursuant to Minn. Stat. § 542.09 because the events giving rise to this action occurred in Minneapolis, Minnesota.

1

## FACTS

6.     Plaintiff began working for Defendant as a Payroll Specialist on October 12, 2022. Ms. Thelen applied for and accepted this position as it was advertised as a hybrid remote position, allowing her to work from home three days per week. This was attractive because Ms. Thelen suffers from a multitude of medical conditions which require ongoing treatment and frequent doctor appointments.

7.     In this role, Plaintiff was originally responsible for managing and administering payroll for the company. Overtime, her responsibilities expanded to include Human Resources ("HR") and accounts receivable functions. Ms. Thelen successfully worked in this role for roughly two years without incident. For the duration of her employment with the company, Ms. Thelen was an exceptional employee with no write-ups or disciplinary actions whatsoever.

8.     Ms. Thelen suffers from kidney disease, congestive heart failure, asthma, and has a multitude of back and neck issues (i.e., herniated discs, sciatica, back pain) stemming from a car accident 18 years prior.

9.     On her first day, Ms. Thelen requested that the company honor her placard and allow her to park in a handicapped parking spot. Despite regulations requiring handicapped parking spaces and accessibility, Sunburst did not have any marked handicapped parking spot reserved for individuals with disabilities.

10.     After bringing up her request multiple times with HR Representative, Steve, and the Owner, Robert Laughlin ("Mr. Laughlin"), Ms. Thelen was instructed to park in visitor's parking, which only had two spots that were always taken, often by the Vice President ("VP") Jay Cecko ("Mr. Cecko"), and senior leadership. Due to frequent inadequate parking accommodations, Ms. Thelen's husband often drove her to work.

2

11.     In addition to insufficient parking for her disability, Sunburst almost immediately altered Ms. Thelen's hybrid remote schedule, forcing her to come into the office three days per week. Ms. Thelen conceded to this arrangement on a temporary basis and requested that Sunburst include the details of the temporary arrangement in her personnel file. After promising that it would, Sunburst never altered her file, nor did it ever restore her to the original hybrid schedule that she was promised upon accepting the role.

12.     Ms. Thelen also requested a reasonable accommodation for chair that would allow her legs to sit elevated off the floor. Ms. Thelen often experienced swelling, and poor circulation in her legs as a result of her congestive heart failure. When making her accommodation request, Ms. Thelen was told to "go find a chair in the office." Sunburst freely provided this same accommodation to her coworker. Yet Ms. Thelen was forced to purchase her own chair out of pocket and later had to seek reimbursement from the company.

13.     Ms. Thelen had reported a number of issues to management during her tenure. Ms. Thelen had found a dead mouse in her cube and requested that the company hire an exterminator to address the rodent problem. After some push back, the company finally hired an exterminator.

14.     In addition to pests, the office kitchen was riddled with black mold, causing Ms. Thelen's asthma to flare up. Ms. Thelen requested that the company allow her to work from home until the mold was eradicated.

15.     In or around June of 2024, Ms. Thelen became so fed up that she threatened to file a complaint against the company for failing to comply with regulations for handicapped parking and building accessibility. A temp HR worker named Tina Thompson ("Ms. Thompson") ordered a handicapped parking sign within the hour; it was installed the next day.

16.     In July of 2024, Ms. Thelen's health severely declined. On July 29, 2024, Ms. Thelen was admitted to the emergency room. Upon being admitted, Ms. Thelen notified the company.

17.     On July 30, 2024, despite knowing that Ms. Thelen was in the hospital, Sunburst demanded that she continue working through her hospital stay. Specifically, Sunburst had Ms. Thelen's husband bring her laptop to the hospital with the expectation that she would complete payroll even though she was on Morphine for her pain. When the company's HR Generalist Jules Pratt ("Ms. Pratt") discovered this, she immediately acted and reminded the company that Ms. Thelen should not be expected to work while she is in the hospital on leave.[1] Ms. Thelen also communicated that she did not feel comfortable performing payroll duties while under the influence of the Morphine.

18.     On August 1, 2024, Ms. Thelen was diagnosed with pancreatitis and hospitalized for roughly eight days.

19.     On August 9, 2024, Ms. Thelen requested the necessary paperwork to obtain protected job leave under the Family Leave Medical Act ("FMLA").

20.     Throughout her hospitalization, Ms. Thelen continuously updated her supervisor and HR regarding her status and diligently provided medical documentation to support her leave as requested.

21.     On August 14, 2025, Ms. Thelen was discharged from the hospital. Her provider instructed her to remain at home to recover. Eventually she was readmitted to the hospital on September 4, 2025, and was diagnosed with chronic pancreatitis. Ms. Thelen's condition was so painful and severe that she lost roughly 30 lbs. over the course of two weeks.

---

[1] See Exhibit 1, Jules Pratt Affidavit.

22.    On September 9, 2025, Ms. Thelen notified the company that her treatment uncovered a mass in her colon, and that she would have to attend frequent doctor's appointments in the future to monitor her condition.

23.    On September 11, 2024, Ms. Thelen was discharged from the hospital and sent home to recover.

24.    On September 13, 2024, Sunburst terminated Ms. Thelen, despite her still being on leave. Critically, Sunburst did not even notify Ms. Thelen directly of termination. Ms. Thelen only learned of her termination after her co-worker called her asking her if she had resigned, explaining that that Sunburst sent out a companywide email notifying every one of Ms. Thelen's departure. The announcement also included job postings for an HR Assistant and an Accounts Receivable position. Both positions essentially described Ms. Thelen's role.

25.    After learning about the company wide announcement, Ms. Thelen called her supervisor and requested an update on her employment status.

26.    On September 17, 2024, Ms. Thelen finally received her notice of termination letter in the mail. When requesting clarification on her termination, Sunburst purported that it was "eliminating [her] position." Ms. Thelen noted that the open roles advertised were identical functions that she performed as a single employee in her role.

27.    Following her termination, Ms. Thelen applied for both open positions. Despite successfully performing these same duties for Sunburst, the company communicated that she "was not qualified" for the positions and that the company had "found someone better qualified" for the role.

## COUNT I
## DISABILITY DISCRIMINATION
## IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT
## (MINN. STAT. § 363A.01)

28.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as fully set forth herein.

29.    The MHRA prohibits discrimination against qualified individuals with disabilities and requires employers to provide reasonable accommodations unless doing so would impose an undue hardship. Minn. Stat. § 363A.08, subd. 6.

30.    The MHRA defines disability as "any physical, sensory, or mental impairment which materially limits one or more major life activities" or "an impairment that is episodic or in remission and would materially limit a major life activity when active." Minn. Stat. § 363A.03, subd. 12(1), (4).

31.    Plaintiff's medical conditions all qualify as disabilities under the MHRA.

32.    As evidenced by her strong performance record, Plaintiff was well qualified for her role. Plaintiff never received any write-ups, disciplinary actions, or complaints regarding her performance.

33.    Defendant failed to provide reasonable accommodation for Plaintiff's disabilities on multiple occasions. First, Defendant failed to accommodate Ms. Thelen by refusing to provide her with handicapped accessible parking. Second, Defendant failed to accommodate Ms. Thelen's request for a chair that would allow her legs to remain elevated and ease the swelling caused by her congestive heart failure. Instead of providing her with a chair, as it did for another employee, Ms. Thelen was forced to purchase her own chair out of pocket. Finally, Defendant failed to accommodate Ms. Thelen by refusing to honor her medical leave under the FMLA.

6

34.    Defendant cannot credibly argue that accommodating Ms. Thelen would have imposed any hardship on the company.

35.    Protected leave under the FMLA is standard reasonable accommodation for an employee experiencing health complications. As Ms. Thelen had been with the company for over a year, she was eligible for FMLA leave.

36.    Ms. Thelen followed the steps required to obtain FMLA and was approved. Despite being on leave and in extreme pain, Sunburst expected Ms. Thelen to continue performing her duties.

37.    Furthermore, Sunburst terminated Ms. Thelen while she was still on FMLA leave. Sunburst failed to accommodate Ms. Thelen by refusing to provide job protection for the full duration of her leave.

38.    To add insult to injury, Sunburst did not even inform Ms. Thelen of her employment status directly. Instead, Sunburst blind-sided Ms. Thelen by emailing the entire company, announcing her departure, and advertising for her backfill.

39.    Defendant's reason for terminating Ms. Thelen is clear pretext. Defendant claimed it was eliminating Ms. Thelen's role and then subsequently advertised two positions that were identical to her role.

40.    Defendant's actions were taken with either reckless disregard or deliberate disregard for the rights of Plaintiff.

41.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## COUNT II
## REPRISAL
## IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT
## (MINN. STAT. § 363A.01)

42.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as fully set forth herein.

43.     The MHRA prohibits "any form of intimidation, retaliation, or harassment" against an employee who has opposed unlawful practices or sought accommodation for a disability.

44.     In order to establish a *prima facie* case of reprisal Ms. Thelen  must establish: "(1) that she engaged in statutorily protected conduct; (2) an adverse employment action by the employer; and (3) a causal connection between the two" *Peterson v. State*, C5-01-753, 2001 Minn. App. LEXIS 1288, at *1 (Ct. App. Dec. 4, 2001).

45.     Plaintiff engaged in statutorily protected conduct on multiple occasions when she requested reasonable accommodations.

46.     Defendant engaged in multiple actions constituting reprisal, including but not limited to:

  a.   Requesting that the Plaintiff work while being hospitalized and on leave.

  b.   Refusing to provide job protected for the duration of the approved leave period.

  c.   Terminating the Plaintiff while she was still on leave and making a companywide announcement to her peers without even notifying her of her own departure first.

  d.   Refusing to hire her for the same roles she had successfully performed at the company.

47.     The actions above are not merely a failure to accommodate but demonstrate active hostility toward Plaintiff's protected activity and disability.

48.     Defendant's actions were taken with either reckless disregard or deliberate disregard for the rights and safety of Plaintiff.

49.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

**COUNT III**
**RETALIATION**
**IN VIOLATION OF THE MINNESOTA WHITSLEBLOWER ACT**
**(MINN. STAT. §181.932)**

50.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as fully set forth herein.

51.     The Minnesota Whistleblower Act ("MWA") provides protections for employees who report violations or suspected violations of laws, rules, or regulations in good faith. Thus, employers are prohibited from retaliating against employees who report such violations, participate in public investigations, or refuse to perform actions they believe to be unlawful.

52.     Under the MWA, Ms. Thelen must demonstrate: "(1) engagement in protected conduct, (2) an adverse employment action, and (3) a causal connection between the two. *Cokley v. City of Otsego*, 623 N.W.2d 625, 627 (Minn. Ct. App. 2001).

53.     Ms. Thelen engaged in protected activity on multiple occasions. Ms. Thelen reported the pest and mold problem. Both are violations of workplace safety standards under OSHA.

54.     Ms. Thelen had presented the parking request multiple times without any resolution. Frustrated, Ms. Thelen communicated with Ms. Thompson that the company was noncompliant with Federal and state law. During this conversation, she explained that not only has

9

the company failure to provide accessible parking, but the company was also out of compliance with providing handicapped accessible bathrooms as well. Ms. Thelen clearly stated that she was ready to file a complaint against the company for the issues forementioned.

55.    In response, the company finally granted her request for handicapped accessible parking in July of 2024. Sunburst terminated Ms. Thelen only a few weeks later.

56.    There is a causal connection between Ms. Thelen's protected activity and termination. This is not only demonstrated by temporal proximity but also by the pretextual nature of her termination. Ms. Thelen was a single employee who adequately served in a dual role. Instead of allowing her to continue serving both functions, Sunburst terminated her and divided her duties to give the appearance that it was eliminating her position. The reality is that Sunburst no longer wanted to accommodate her or tolerate her speaking out against the compliance issues at the company.

57.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## COUNT IV
### INTERFERENCE AND RETALIATION
### IN VIOLATION THE FAMILY MEDICAL LEAVE ACT
### (29 USCS § 2601)

58.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as fully set forth herein.

59.    Under the FMLA, employers are prohibited from interfering with, restraining, or denying the exercise of FMLA rights, and they may not retaliate against employees for taking FMLA leave. 29. U.S.C. § 2615(a)(1).

10

60.     To succeed on an FMLA interference claim, Ms. Thelen "must show that she was eligible for FMLA leave, the employer knew she needed FMLA leave, and the employer denied her an FMLA benefit to which was entitled." *Smith v. AS America, Inc.*, 829 F.3d 616, 621 (8th Cir. 2016). An employee can prove interference with an FMLA right regardless of the employer's intent. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th103 Cir. 2006) (citations omitted). "[A]n interference claim merely requires proof that the employer denied the employee [her] entitlements under the FMLA." *Id.* 105 at 1051.

61.     First, Ms. Thelen will be able to demonstrate that she was entitled to FMLA beginning July 29, 2024, when she was first admitted to the hospital for pancreatic and kidney-related complications. Ms. Thelen was eligible for FMLA leave at the time of her hospitalization: she began working for Sunburst on October 12, 2022, and became eligible for FMLA protection in October of 2023, after completing the required 12 months of employment and working at least 1,250 hours during the preceding 12-month period. By July 2024, when she requested medical leave, she had been employed for approximately 21 months, well beyond the eligibility threshold. Because Sunburst was in communication with Ms. Thelen's medical provider—as evidenced by their sending over an albeit blank FMLA paperwork sheet—they were on notice of her need for FMLA medical leave.

62.     Sunburst interfered with Ms. Smith's rights under the FMLA in several ways. First. Sunburst interfered with Ms. Thelen's right to take uninterrupted leave when it required her to perform work while hospitalized. On July 30, 2024, just one day after Ms. Thelen began her medical leave, Sunburst had her husband bring her laptop to the hospital and demanded that she complete payroll tasks while she was receiving morphine for her condition. Sunburst This directly

violated 29 C.F.R. § 825.220(b), which prohibits employers from "interfering with, restraining, or denying" the exercise of FMLA rights.

63.    Second, Sunburst terminated Ms. Thelen's employment on September 13, 2024, just two days after she was discharged from the hospital and while she was still on protected medical leave. This termination occurred immediately after Ms. Thelen informed Sunburst on September 9, 2024, that she would need ongoing medical care, including weekly checkups for her colon and pancreas. The timing of the termination, just days after Ms. Thelen disclosed her need for continued medical monitoring, strongly suggests that Sunburst terminated her to avoid accommodating her medical needs, a clear violation of her FMLA rights.

64.    Sunburst violated the Family and Medical Leave Act by retaliating against Ms. Thelen for exercising her FMLA rights. Sunburst terminated Ms. Thelen in retaliation for taking FMLA leave and disclosing her need for ongoing medical care, as evidenced by the suspicious timing of her termination immediately following her hospitalization and the pretextual nature of Sunburst's "position elimination" explanation.

65.    To establish a *prima facie* case of FMLA retaliation, an employee must demonstrate that: (1) she engaged in protected activity by exercising FMLA rights; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Smith v. Allen Health Systems, Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). Once the employee establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. If the employer provides such a reason, the burden shifts back to the employee to demonstrate that the stated reason is pretextual. *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2008).

66.     As forementioned, Ms. Thelen was an employee for the company for over a year and thus was entitled to coverage under the FMLA. She exercised a protected right under the FMLA when she applied for interment leave in February of 2024, and later in July of 2024 when she was hospitalized for pancreatitis. Ms. Thelen provided all necessary paperwork and was approved by the company.

67.     Ms. Thelen remained on medical leave through September 11, 2024, when she was discharged from the hospital. During this period, she properly communicated with her supervisors about her medical condition and submitted doctor's notes documenting her need for leave. Additionally, on September 9, 2024, Ms. Thelen informed Sunburst that she would require ongoing medical checkups for her colon and pancreas, which constitutes protected activity under the FMLA as it relates to her serious health condition.

68.     Despite it all, Sunburst terminated her on September 13, 2024, only two days after being discharged, while still being out on medical leave. This timing is highly suspicious and strongly suggests a causal connection between her protected activity and termination. Courts have consistently recognized that close temporal proximity between protected activity and adverse action can establish the requisite causal connection. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 445 (Minn. 1983).

69.     This is blatant retaliation under the FMLA, and Sunburst will not be able to articulate a legitimate business reason for terminating Ms. Thelen that would allow it to evade liability under the FMLA. Sunburst stated that it eliminated her position but then posted the exact same position divided into two roles.

70.     Critically, Ms. Thelen applied for both roles following her termination and was told she was unqualified to perform the positions, despite performing identical roles previously.

13

71.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits, and other serious damages.

## PRAYER FOR RELIEF

Therefore, Plaintiff requests that judgment be entered against Defendant for the following:

a.     Declaring that Defendant's acts or omissions described in this Complaint constitute violations of applicable federal and state laws which protect Plaintiff;

b.     Enjoining Defendant and its employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries and all other persons acting in concert or participation with it, from its unlawful acts;

c.     Requiring Defendant to make Plaintiff whole for its adverse, retaliatory, and discriminatory actions with compensatory damages and with interest of an appropriate inflation factor;

d.     Awarding Plaintiff attorneys' fees, costs, and disbursements pursuant to statute; and

e.     Granting other and further relief as the Court deems fair and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS.

Dated: December 17, 2025

Shawn J. Wanta (#0389164)
*Attorney for Plaintiff*
WANTA THOME PLC
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: (612) 252-3570
Fax: (612) 252-3571
sjwanta@wantathome.com

ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated: December 17, 2025

Shawn J. Wanta